BOSCA v J. A. FERGUSON CONSTRUCTION CO.

OPINION OF THE COURT

1. APPEAL AND ERROR—MOTIONS FOR DIRECTED VERDICT—REVIEW OF
   EVIDENCE—REVIEW OF INFERENCES—MEANING OF EVIDENCE—
   DIFFERENCE OF OPINION—DENIAL OF MOTION.

   The Court of Appeals, in reviewing the denial of a motion for a
   directed verdict, is required to view the evidence and all
   legitimate inferences emanating from the evidence in the light
   most favorable to the opponent of the motion; a motion for a
   directed verdict is correctly denied if reasonable minds could
   differ as to whether the evidence presented was sufficient to
   establish the claim of the party opposing the motion.

2. JUDGMENT—MOTIONS FOR DIRECTED VERDICT—EVIDENCE OF NEGLI-
   GENCE—NEGLIGENCE CASES—APPEAL AND ERROR.

   A motion for a directed verdict in a negligence action is properly
   denied where there is substantial evidence of negligence
   against the moving party; directed verdicts in negligence cases
   are viewed with disfavor.

3. PLEADING—AMENDMENT—JUDGE'S DISCRETION—PREJUDICE—COURT
   RULES.

   Leave to amend pleadings should be freely given except where
   the opposing party may suffer prejudice by the amendment
   (GCR 1963, 118.1).

4. PLEADING—AMENDMENT—UNDUE DELAY—UNREASONABLE TO DE-
   FEND—PREJUDICE—REMISS PROCEDURAL PRACTICE.

   Denial of leave to amend pleadings is proper where litigation has
   proceeded to a point where the opposing party cannot reason-
   ably be expected to defend against the amendment; leave to

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886.
[2] 57 Am Jur 2d, Negligence § 7.
[3, 4] 61 Am Jur 2d, Pleading §§ 309–311.
[5, 6] 15A Am Jur 2d, Compromise and Settlement § 45 *et seq.*
   41 Am Jur 2d, Indemnity § 31, 33, 42.

amend pleadings should be denied where prejudice to the opposing party is attributable to remiss procedural practice.

DISSENT BY BASHARA, J.

5. INDEMNITY—DEFENSES TO ACTION—MODIFICATION OF PLEADINGS—
   NEGLIGENCE SETTLEMENTS—OPPORTUNITY TO LITIGATE DE-
   FENSES.

   *A rule that precludes indemnitors from raising meritorious de-
   fenses to an indemnitee's action by modification of pleadings or
   through trial by implied consent merely because the indemni-
   tee has settled with the principal plaintiff in a negligence case
   is improper; the test for the inclusion of such a defense should
   be whether the indemnitee has an opportunity to fairly litigate
   the defense raised by the indemnitor.*

6. INDEMNITY—DEFENSES TO ACTION—OPPORTUNITY TO LITIGATE DE-
   FENSES—PREJUDICE AND FAIR TRIAL—LEGAL RESPONSIBILITY—
   PLEADING—AMENDMENT—QUESTIONS OF FACT.

   *An indemnitee's prior settlement with the principal plaintiff in a
   negligence action is irrelevant to the merits of the indemnitor's
   defenses to a claim for indemnity; the amount of liability is
   determined by an indemnitee's settlement with the principal
   plaintiff, and the ensuing trial on the indemnity claim deter-
   mines who is legally responsible for payment.*

Appeal from Wayne, Joseph A. Sullivan, J. Sub-
mitted June 23, 1977, at Detroit. (Docket No.
28069.) Decided October 12, 1977.

Complaint by Margaret Bosca, administratrix of
the estate of Roger Bosca, deceased, against J. A.
Ferguson Construction Co., seeking damages for
wrongful death. The Ferguson Company filed a
third-party complaint for indemnification against
Irving M. Moskovitz & Company. Plaintiff and
defendant Ferguson Company entered into a con-
sent judgment. Third-party defendant Moskovitz &
Company moved for a directed verdict on the
third-party claim. Motion denied. Judgment for
defendant Ferguson Company on the indemnifica-

tion claim. Third-party defendant Moskovitz & Company appeals. Affirmed.

*Martin, Bohall, Joselyn, Rowe & Jamieson, P. C.,* for plaintiff.

*Lakin & Worsham, P. C.,* for third-party defendant Irving M. Moskovitz & Company.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

PER CURIAM. This is a suit on a contract of indemnification. Under the contract, the subcontractor, Irving M. Moskovitz & Company, agreed to indemnify and hold harmless the general contractor, J. A. Ferguson Construction Co., for covered claims arising from the subcontractor's work on a multistory apartment building to be constructed in Highland Park, Michigan. On May 1, 1972, Roger Bosca, a Moskovitz employee, fell to his death from a fifth-floor opening in the building under construction. The circumstances of his fatal plunge, hotly disputed at trial, are largely a matter of conjecture. The record, however, discloses (1) that Bosca fell as he was preparing manually to hoist 20-foot lengths of copper tubing by leaning out from the fifth-floor opening of the structure, and (2) that a wooden two-by-four, wedged horizontally between the side walls of the opening as a barrier, failed of its intended purpose and shortly preceded Bosca in his fall.

Bosca's administratrix filed a wrongful death action against Ferguson on July 21, 1972, alleging that Ferguson's method of barricading the opening

"was so grossly negligent, wilfully unlawful, wrong-

* Circuit judge, sitting on the Court of Appeals by assignment.

ful, reckless, wanton and done in a reckless disregard of Plaintiff's decedent's rights and safety, as to exhibit a reckless, wanton indifference to the consequences of his (sic) actions."

On February 21, 1973, Ferguson filed a third-party complaint for indemnification against Moskovitz. In its April 24, 1973 answer, Moskovitz raised certain defenses not here pertinent, but failed to assert gross negligence or wilful, wanton misconduct on the part of Ferguson. On January 28, 1974, Bosca and Ferguson entered into a consent judgment in the amount of $260,000. Finally, on February 26, 1976, the instant trial commenced. The jury, finding both Ferguson and Moskovitz negligent, awarded recovery under the indemnification contract to Ferguson.

On appeal, Moskovitz raises four issues, only two of which need be discussed:

"I. Did Third Party Plaintiff Fail To Present Sufficient Proof Of Third Party Defendant's Negligence And The Causal Relationship Thereof To Bosca's Fall, Thereby Requiring An Order Of Directed Verdict?

"II. Was The Issue Of Indemnitee's "Gross Negligence" Or Wilful And Wanton Misconduct Raised By The Pleadings, Or Tried By The Implied Consent Of The Parties, And If The Latter, Should The Court Have Allowed An Amendment To Conform To The Proofs?"

I.

In reviewing the denial of motions for a directed verdict, this Court is required to view the evidence, and all legitimate inferences emanating

from the evidence, in the light most favorable to the opponent of the motion. *Hackett v Foodmaker, Inc,* 69 Mich App 591; 245 NW2d 140 (1976). If reasonable minds could differ on the meaning of the evidence, then the motion is correctly denied. *Birou v Thompson-Brown Co,* 67 Mich App 502; 241 NW2d 265 (1976).

Donning, then, the appropriate appellate spectacles, we find substantial evidence of negligence properly attributable[1] to Moskovitz. Sylvester, Moskovitz's foreman, stated in his deposition that he was aware of the dangerous and unsafe condition of the barricaded openings, that he informed all of his men to stay away from the barriers, and that all of his employees, Bosca included, knew of the unsafe conditions. Sylvester also stated that the process used in passing the copper tubing up to higher floors was dangerous and that he would have called a halt had he known of it. Moreover, Weiser, the Moskovitz employee assigned to direct Bosca's work, admitted that he sent Bosca to the fifth floor to receive the copper tubing. Given this evidence and our recognition that directed verdicts, particularly in negligence cases, are viewed with disfavor, *Cody v Marcel Electric Co,* 71 Mich

---

[1] In pertinent part the contract of indemnity provides:

"11.20 The Subcontractor shall indemnify and hold harmless the Contractor and all of his agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Subcontractor's Work under the Contract Documents, provided that any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) *is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable,* regardless of whether it is caused in part by a party indemnified hereunder." (Emphasis added.)

Clearly, the negligence of Weiser or Bosca would invoke the italicized language of the contract, thus imputing their negligence to Moskovitz, their employer.

App 714; 248 NW2d 663 (1976), we hold that the trial court did not err in denying Moskovitz's motion for directed verdict.

## II.

In considering appellant's second assignment of error, we shall assume *arguendo* that the issue of Ferguson's gross negligence or wilful, wanton misconduct was tried by the implied consent of the parties. GCR 1963, 118.6. The dispositive question then becomes whether the lower court abused its discretion in denying Moskovitz's request to amend its pleadings to add the foregoing defenses.

Under GCR 1963, 118.1, leave to amend the pleadings "shall be freely given" except where the opposing party may suffer prejudice by the amendment. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973). As noted in *Fyke:*

" ' "Prejudice" refers to matter which would prevent a party from having a fair trial, or matter which he could not properly contest, e.g. when surprised. *It does not refer to the effect on the result of the trial otherwise.'* (Emphasis supplied.)

\* \* \*

" 'The possible prejudice, in other words, must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the amendment is allowed, whereas he may win it if the amendment is denied.' James, Civil Procedure, § 5.2, p 158 (emphasis by the author)." 390 Mich at 657–658.

Moreover, the Court in *Fyke* recognized that "[t]he litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially perti-

nent factor on the eve of, during, or after trial."
*Id.* at 663.

Based on the cited language in *Fyke, supra,* and on our independent examination of the circumstances at bar, we find a sufficient demonstration of prejudice to Ferguson and, accordingly, discern no abuse of trial-court discretion in the denial of amendment. Here, almost a year after Moskovitz filed its answer—an answer silent on the affirmative defenses now alleged—Ferguson entered into a consent judgment with Bosca's administratrix. Had Moskovitz's answer timely alleged the then-apparent defenses of gross negligence and wilful, wanton misconduct, Ferguson might well have declined to settle the principal lawsuit.

Instead, having thus settled based on a calculation of defenses to be asserted in the third-party suit, Ferguson was then placed in the anomalous position of showing its actual or potential negligence (in order to justify settlement) while simultaneously showing that its negligence was no greater than that of Moskovitz (in order to succeed on the indemnity claim). See *Tankrederiet Gefion A/S v Hyman-Michaels Co,* 406 F2d 1039 (CA 6, 1969). In this context, it is clearly unfair to require that Ferguson object to "evidence * * * at the trial on the ground that it is not within the issues made by the pleadings". GCR 1963, 118.3. Rather, we agree with the trial court that the demise of Moskovitz's arguably assertable and readily apparent defenses is attributable to remiss procedural practice. If the lower court had granted amendment, it would have mistakenly bestowed a benefit on Moskovitz while at the same time rendering even more tenuous Ferguson's already compromised position. The lower court thus declined an invitation to stretch the policy of liberal amend-

ment beyond its breaking point. We affirm that decision.

Costs to appellee.

Bashara, J. *(dissenting).* I cannot agree with either the reasoning or the result attained by the majority in part II of its opinion.

Distilled to its essence, the majority's decision establishes a rule that precludes indemnitors from raising meritorious defenses to an indemnitee's action merely because they are raised by a modification of pleadings or tried by implied consent after the indemnitee has settled with the principal plaintiff. This ignores the determinative question: has the indemnitee been given an opportunity to fairly litigate the defense raised by the indemnitor?

The majority finds prejudice to the indemnitee (Ferguson) from its prior settlement with the principal plaintiff. However that settlement is irrelevant to the merits of the indemnitor's (Moskovitz's) defense and whether the indemnitee had a fair opportunity to litigate those merits. Further, the majority appears to overlook the clear import of the authority it quotes in support of its position. Reference to that authority discloses that the resultant prejudice must relate to the party's being precluded from a fair trial, not whether that party may lose on the merits.

Only the *amount* of liability was determined by Ferguson's settlement. The ensuing trial would determine who was legally responsible for payment.

In that trial testimony was presented showing Ferguson's general superintendent was advised of the dangerously inadequate barricades utilized. Notwithstanding Ferguson's knowledge of that

dangerous condition, no remedial measures were instituted. In response, Ferguson offered testimony in an attempt to show that the practicalities of construction excused its use of inadequate barricades.

Surely a question of willful and wanton negligence was presented by the foregoing testimony. A jury could readily find that the protection of human life warranted some inconvenience in construction procedures so that more effective barricades could, and should, be utilized. Moreover, the jury could find that failure to utilize effective barricades, after Ferguson knew of the dangerous condition, constituted willful and wanton negligence. I conclude that it was error for the trial judge to preclude the trier of fact from considering this issue.

I would reverse and remand for a new trial.