MILLER v GREAT LAKES STEEL CORPORATION

Docket No. 49486. Submitted June 3, 1981, at Detroit.—Decided January 5, 1982.

Odis Miller brought an action against Great Lakes Steel Corporation for damages incurred as a result of injuries received by him while working for Great Lakes' contractor, Valley Consolidated Industries, alleging that the work was inherently dangerous and that Great Lakes retained sufficient control over the work to be liable for the injuries. Great Lakes brought a third-party action against Valley Industries for common-law indemnity and subsequently moved for a directed verdict against Miller. Wayne Circuit Court, Roland L. Olzark, J., granted the motion relative to the "right of control" theory, but denied the motion relative to the "inherently dangerous" theory. Following trial, the jury returned a verdict of no cause of action. Miller appeals the trial court's grant of Great Lakes' motion. *Held:*

The trial court properly directed a verdict in favor of Great Lakes relative to Miller's "right of control" theory. The record reveals that Great Lakes exercised insufficient control as a matter of law to impose liability.

Affirmed.

BRONSON, P.J., dissented. He would hold that reasonable jurors could have found that Great Lakes retained sufficient control of the work project to impose liability based on the detailed terms of its contract with Valley Industries, the absence of day-to-day supervision of the project notwithstanding. He would reverse and remand.

OPINION OF THE COURT

1. APPEAL — DIRECTED VERDICTS.

The Court of Appeals, in reviewing a denial of a motion for a directed verdict, must view the evidence and all legitimate

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 110.
[2, 3] 57 Am Jur 2d, Negligence § 50.
[3] 57 Am Jur 2d, Negligence § 47.

inferences emanating therefrom in a light most favorable to the nonmoving party, and where reasonable minds could not differ regarding the meaning of the evidence the trial court will be upheld.

2. MASTER AND SERVANT — CONTRACTORS — NEGLIGENCE — TORTS.

Generally, a property owner is not liable to an employee of a contractor for the contractor's negligence; however, where the owner retains sufficient control of the work performed by the contractor which amounts to more than mere contractual control, safety inspections, and general oversight, liability for such negligence may be imposed.

DISSENT BY BRONSON, P.J.

3. MASTER AND SERVANT — CONTRACTORS — NEGLIGENCE — TORTS.

*The terms of a contract between a property owner and a contractor may be so detailed regarding how work is to be performed as to amount to a retention by the owner of control of the work, even where no day-to-day supervision is exercised by the owner, sufficient to impose liability on the owner for the contractor's negligence which results in an injury to the contractor's employee.*

*Smith & Quinn,* for plaintiff.

*Gromek, Bendure & Thomas* (by *Mark R. Bendure* and *Nancy L. Bosh),* for Great Lakes Steel Corporation and Valley Consolidated Industries.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.,* for Great Lakes Steel Corporation.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark,* for Valley Consolidated Industries.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

F. X. O'BRIEN, J. Plaintiff appeals as of right from an order denying his motion for new trial. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff, an employee of third-party defendant Valley Consolidated Industries (Valley), was injured while working inside a blast furnace at the premises of defendant Great Lakes Steel Corporation (Great Lakes). Great Lakes had engaged Valley by contractual agreement to reline certain blast furnaces at the Great Lakes plant on Zug Island.

In order to get into the stove in the furnace to tear out the brick, the workmen used a swinging scaffold. Plaintiff and a second employee of Valley, James Willis, were asked to work on the scaffold. Willis would signal a winch operator to raise and lower the scaffold. Both men wore safety belts.

After a coffee break, the two men returned to the scaffold and signaled the operator to lower it to the point where they had been working. When they reached that point, Willis signaled the operator to stop, but the scaffold continued to descend. Willis was able to pull off his safety belt and remain on the scaffold. Plaintiff, however, was not able to pull off the belt and was left hanging in the air by his belt.

Willis continued to signal the operator for about 8 to 10 minutes and, eventually, the scaffold was raised. Plaintiff grabbed the cable, and the scaffold continued to the top of the stove where the men got off. Plaintiff was awarded $18,500 as workers' compensation. He filed the instant action against Great Lakes, alleging that Great Lakes, as the owner of the property, was liable for his injuries under one of two theories. First, plaintiff alleged that the work was inherently dangerous. Plaintiff also alleged that Great Lakes retained the right of control over the work and, thus, was liable for the injuries.

Great Lakes moved for a directed verdict on the

basis that plaintiff had failed to establish a right
to recovery under either theory. The trial court
granted the motion on plaintiff's "right of control"
theory but denied the motion on the "inherently
dangerous" theory. The jury ultimately returned a
verdict of no cause of action on the latter theory.
Plaintiff does not challenge the jury verdict. This
appeal is limited to a determination of whether
the trial court erred in directing a verdict in Great
Lakes' favor on plaintiff's right of control theory of
recovery.

In reviewing a motion for a directed verdict, this
Court is required to view the evidence, and all
legitimate inferences emanating from that evi-
dence, in a light most favorable to the nonmoving
party. If reasonable minds could not differ on the
meaning of the evidence the motion is correctly
granted. *Bosca v J A Ferguson Construction Co,* 79
Mich App 177; 261 NW2d 249 (1977), *Dowell v
General Telephone Co of Michigan,* 85 Mich App
84; 270 NW2d 711 (1978), *Beals v Walker,* 98 Mich
App 214; 296 NW2d 828 (1980). Thus, the question
becomes whether plaintiff presented evidence suffi-
cient to raise a jury question on his theory of right
of control.

The general rule is that an owner of property is
not liable to an employee of a contractor for
negligence. If, however, the owner retains control
of the work, liability may be imposed for the
contractor's negligence. *Funk v General Motors
Corp,* 392 Mich 91; 220 NW2d 641 (1974). The
evidence presented by plaintiff on the issue of
control consisted primarily of the deposition testi-
mony of Earl Haren, Great Lakes' safety supervi-
sor, which was read into evidence, and of certain
contractual provisions.

Haren testified that he would inspect the job site

and report any unsafe conditions which he observed to Great Lakes' field engineer. The testimony indicated, however, that Valley had a construction superintendent who was responsible for taking care of any of the problems which arose. The contract provisions basically provided that Great Lakes would have the right to inspect the site and make safety investigations, to reject subcontractors chosen by Valley, to make changes in specifications and design, and to take over the completion of the work if there was a failure on the part of Valley to perform. The evidence does not indicate that Great Lakes retained the right to exercise any substantive control over how Valley performed its work. This Court finds that on the basis of this evidence the directed verdict was properly granted in Great Lakes' favor.

The circumstances of the instant case must be contrasted with those of cases where it was determined that the owner retained control sufficient to subject it to liability. In *Bissell v Ford,* 176 Mich 64; 141 NW 860 (1913), the evidence showed that the owner, through its architect, retained the right to partially control the work of the contract. In *Funk,* the evidence showed that the owner assumed a "dominant role" in the construction job, including extensive day-to-day supervision. The owner, the Court noted, did more than merely observe whether the contract was being properly performed. In many instances, what the owner said or did not say determined how the work would be performed. *Funk, supra,* 108. In *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972), the evidence showed that the owner reserved to itself some measure of influence or control over the way the work was to be done. In *Dowell,* the evidence showed that an employee

of the owner was on the job site, perhaps in a supervisory role, that the owner drew up the blueprints for the work to be done, furnished some of the equipment to be used, and, because the undertaking was particularly within its knowledge and expertise, was better acquainted with all aspects of the assigned tasks than was the contractor. These cases indicate that some sort of substantive control must be maintained by the owner over the contractor's work in order to render the owner liable for an injury to a contractor's employee.

In contrast to the above cases, this Court has held that a contractual right to terminate anyone who did not comply with the owner's rules and regulations was insufficient as a matter of law to constitute "control" of the work. *Erickson v Pure Oil Corp,* 72 Mich App 330; 249 NW2d 411 (1976). Similarly, this Court has held that the specification of safety requirements in a contract is alone insufficient as a matter of law to constitute control. *Markward & Karafilis, Inc v Detroit Osteopathic Hospital Corp,* 77 Mich App 728; 258 NW2d 161 (1977). This Court finds that the control exercised by Great Lakes in the instant case was no more than mere contractual control, safety inspections, and general oversight. The owner must retain the right to partially control and direct the actual construction work. In the instant case, the contractual control and the testimony of Haren were insufficient as a matter of law to raise a jury question under the theory of degree of control. The trial court correctly granted a directed verdict in favor of Great Lakes.

Affirmed.

R. M. MAHER, J., concurred.

BRONSON, P.J. *(dissenting).* I respectfully dissent.

I agree with the majority regarding the legal standard for directing a verdict based on no genuine issue as to any material fact and the general rule that the owner of property is not liable to an employee of a contractor for negligence absent the retention of sufficient control by the owner. Although the factual issue is close, I ultimately conclude that a reasonable jury could have found that Great Lakes retained sufficient control over the work so that it could be found liable.

The contract between Great Lakes and Valley Consolidated Industries contained many provisions which, in conjunction, could have led a jury to conclude that Great Lakes retained sufficient control to be held liable. Great Lakes reserved the right to change specifications and design of the project. The contract required that various materials to be used by Valley Consolidated on the project be purchased from a subsidiary of Great Lakes. Representatives of Great Lakes were given the right to inspect the work at any reasonable time. Great Lakes also had the right to make safety inspections, and this would support a finding of at least some control by the property owner. Great Lakes also retained the power to reject subcontractors selected by Valley Consolidated. The contract further made Valley Consolidated's employees subject to the regulations enforced at Great Lakes' plant. There was also testimony that Great Lakes' Safety Supervisor, Earl Haren, did on occasion require "little corrections" in the manner in which Valley Consolidated completed its work.

I cannot agree that reasonable jurors could not find that Great Lakes retained significant control over the project such that it could be found liable. The safety inspections, the required "corrections",

the imposition of contractual provisions requiring materials to be purchased by Valley Consolidated from a Great Lakes subsidiary, the requirement that Valley Consolidated's workers comply with Great Lakes' plant rules, and the fact that Great Lakes could reject Valley Consolidated's subcontractors might warrant a finding of significant retained control even if Great Lakes' actual interference with Valley Consolidated's day-to-day operation was minimal. It seems to me that a point can be reached where a property owner's contract with a contractor is so detailed in terms of how the work is to be performed that effective control remains with the owner even if no day-to-day supervision is exercised by the owner. Although this case is close, I think a jury could have reached this conclusion in this case.

I would reverse and remand for trial.